UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHARP MEMORIAL HOSPITAL; SHARP CHULA VISTA MEDICAL CENTER; SHARP CORONADO HOSPITAL AND HEALTHCARE CENTER; and GROSSMONT HOSPITAL CORPORATION dba SHARP GROSSMONT HOSPITAL,<br><br>                              Plaintiffs,<br><br>v.<br><br>MEDI-EXCEL, S.A. DE C.V., dba MEDIEXCEL HEALTH PLAN; and DOES 1-10, inclusive,<br><br>                              Defendants. | Case No.:  24-cv-00511-WQH-JLB<br><br>**ORDER** |

HAYES, Judge:

    The matter before the Court is the Motion for Partial Summary Judgment filed by Defendant MediExcel, S.A. De C.V. (ECF No. 47.)

**I.      PROCEDURAL HISTORY**

    On February 13, 2024, Plaintiffs Sharp Memorial Hospital, Sharp Chula Vista Medical Center, Sharp Coronado Hospital and Healthcare Center, and Grossmont Hospital Corporation d.b.a. Sharp Grossmont Hospital (collectively, "Plaintiffs") initiated this

action by filing a Complaint in the Superior Court of California, County of San Diego: Case No. 37-2024-00006620-CU-BC-CTL (the "Complaint"). (ECF No. 1-2.) The Complaint alleges that Defendant MediExcel, S.A. De C.V. ("MediExcel" or "Defendant"), an insurance corporation providing healthcare service plans, reimbursed Plaintiffs at unreasonably low rates for medical care provided to its enrollees treated in Plaintiffs' emergency departments. *Id.*

On March 15, 2024, Defendant removed the action to this Court (ECF No. 1) and, on May 7, 2024, filed its Answer. (ECF No. 11.)

On August 18, 2025, Defendant filed the pending Motion for Partial Summary Judgment (the "Motion"). (ECF No. 47.) On the same day, Defendant filed a Motion to File Documents Under Seal because its filings contain confidential medical records. (ECF No. 48.) The Court granted the Motion to File Documents Under Seal on August 20, 2025. (ECF No. 51.)

On September 8, 2025, Plaintiffs filed a Response in Opposition to the Motion and a Request for Judicial Notice. (ECF Nos. 55, 56.) On the same day, Plaintiffs filed a Motion to File Documents under Seal. (ECF No. 53.)

On September 15, 2025, Defendant filed a Reply in Support of the Motion. (ECF No. 60.) On the same day, Defendant filed a Motion to File Documents Under Seal. (ECF No. 58.)

On November 7, 2025, the Court held Oral Argument on the Motion.

II. **FACTS**

**A. Background**

Plaintiffs own and operate general acute care hospitals in San Diego County. (Compl. ¶ 4.) Under California law, Plaintiffs are required to provide emergency services and care to all individuals who present at their emergency department. *Id.* ¶ 7; Cal. Health & Safety Code § 1317(a).

Defendant is a cross-border health maintenance organization licensed by the California Department of Managed Health Care under Section 1351.2 of the Knox-Keene

2

24-cv-00511-WQH-JLB

Act. (Declaration of Jim Arriola, ECF No. 47-4 ¶ 2). Defendant offers group healthcare coverage to California employers in San Diego and Imperial Counties. *Id.* Enrollees in Defendant's healthcare plans typically reside in Mexico or prefer to access their health care coverage benefits in Mexico. *Id.* Under Defendant's coverage plan, its enrollees' healthcare benefits—with the relevant exception of emergency care—are rendered exclusively in Mexico. *Id.* ¶ 4.

Although Defendant does not enter contracts with emergency care providers in the United States, it does extend coverage to its enrollees for emergency services provided in the United States and reimburses emergency care providers for those services rendered. (Arriola Decl. ¶ 5.) Under such an arrangement, Plaintiffs request payment from Defendant and similarly situated healthcare plan providers for the reasonable and customary costs associated with emergency care provided to enrollees who appear at Plaintiffs' emergency departments seeking care. (Compl. ¶ 6; *see also* Cal. Health & Safety Code § 1371.4(b) (requiring healthcare service plans to "reimburse providers for emergency services and care provided to [their] enrollees, until the care results in stabilization of the enrollee…").)

### B. Reimbursement of Emergency Medical Care

Defendant imposes certain conditions on its repayment to medical providers in the United States for emergency care. First, Defendant refuses payment for medical services rendered after a patient has been stabilized. (Motion at 6.) Under California law, a hospital may not bill a patient for post-stabilization care unless it either contacts the patient's health plan and obtains authorization, contacts the patient's health plan and does not receive any decision within thirty (30) minutes, or cannot obtain the contact information for the patient's health plan. *See* Cal. Health & Safety Code §§ 1262.8(b), (d)(2), (c); Motion at 6–7; Compl. ¶¶ 13–15. Second, Defendant refuses payment for services that are not medically necessary. (Motion at 7.) Third, Defendant refuses payment for post-stabilization services provided to a patient that is unwilling to be transferred to an in-network care provider in Mexico. (Arriola Decl. ¶ 7.) Fourth, Defendant refuses payment for non-emergency services. (Motion at 19.) Plaintiffs do not dispute that Defendant may

lawfully deny reimbursement requests for medical charges on these grounds. (*See* ECF No. 55 at 25 (describing the "specific affirmative defenses" to payment).)

### C. Medical Services at Issue

Between June 2019 and May 2024, approximately 1,000 enrollees in Defendant's healthcare plan coverage ("MediExcel insureds") arrived at emergency departments operated by Plaintiffs. (Compl. ¶ 16; Arriola Dec. ¶ 5.) Plaintiffs rendered care to MediExcel insureds and received reimbursement from Defendant at varying rates for their medical charges incurred. (Compl. ¶ 16.) Defendant paid most reimbursement claims by Plaintiffs at rates ranging from 1% to 35.5% of the requested charge and, for some claims, did not pay any amount. *Id.*

On February 13, 2024, Plaintiffs filed the Complaint against Defendant MediExcel in the Superior Court of the State of California, County of San Diego, alleging that Defendant failed to meet its payment obligations, including non-payment for post-stabilization services rendered after Defendant failed to respond to Plaintiffs' requests for authorization within thirty (30) minutes. *Id.* ¶¶ 16–18. The Complaint states five causes of action: (1) breach of an implied-in-law contract for emergency services; (2) breach of an implied-in-law contract for post-stabilization services; (3) breach of an implied-in-fact contract for post-stabilization services; (4) a claim for services rendered; and (5) a claim for declaratory relief seeking a judicial determination in favor of Plaintiffs' position regarding the payment obligations. *Id.* ¶¶ 19–47.

On May 7, 2024, Defendant filed its Answer. The Answer includes eighteen (18) affirmative defenses. (Answer ¶¶ 48–65.) As relevant to the Motion, the Answer asserts that the applicable statute of limitations "set forth in California Code of Civil Procedure sections 337, 337a, 339, and 343" bars recovery for approximately half of the patients' claims at issue. *Id.* ¶ 49.

/ / /

/ / /

/ / /

## III. LEGAL STANDARD

"A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A material fact is one that is relevant to an element of a claim or defense, and whose existence might affect the outcome of the case." *See United States v. Grayson*, 879 F.2d 620, 622 (9th Cir. 1989) (citation omitted). The materiality of a fact is determined by the substantive law governing the claim or defense. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24 (1986).

The moving party has the initial burden of demonstrating that summary judgment is proper. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 153 (1970). Where the party moving for summary judgment bears the burden of proof at trial, the moving party "must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial." *Houghton v. South*, 965 F.2d 1532, 1536 (9th Cir. 1992). Where the party moving for summary judgment does not bear the burden of proof at trial, "the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp.*, 477 U.S. at 325; *see also United Steelworkers of Am. v. Phelps Dodge Corp.*, 865 F.2d 1539, 1542–43 (9th Cir. 1989) ("[O]n an issue where the plaintiff has the burden of proof, the defendant may move for summary judgment by pointing to the absence of facts to support the plaintiff's claim. The defendant is not required to produce evidence showing the absence of a genuine issue of material fact with respect to an issue where the plaintiff has the burden of proof.  Nor does Rule 56(c) require that the moving party support its motion with affidavits or other similar materials *negating* the nonmoving party's claim." (citations and internal quotation marks omitted)).

If the moving party meets the initial burden, the burden shifts to the opposing party to show that summary judgment is not appropriate. *Anderson*, 477 U.S. at 256; *Celotex Corp.*, 477 U.S. at 322, 324. The nonmoving party cannot defeat summary judgment merely by demonstrating "that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *see also Anderson*, 477 U.S. at 252 ("The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient[.]"). The nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp.*, 477 U.S. at 324 (quotations omitted). The nonmoving party's evidence "is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. However, "'[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial,' and summary judgment is appropriate." *Zetwick v. County of Yolo*, 850 F.3d 436, 441 (9th Cir. 2017) (quoting *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009)).

### IV.  DISCUSSION

Defendant contends that it is entitled to judgment as a matter of law with respect to: (1) all causes of action related to the medical care of 551 patients in this action because the applicable statute of limitations bars Plaintiffs from seeking recovery related to their medical care and (2) the second, third, fourth, and fifth causes of action related to the medical claims of twenty-one patients because individualized circumstances related to their care release MediExcel from payment obligations pursuant to one of the undisputed exemptions from reimbursement. (Motion at 5.)

#### A. Timeliness of the Claims

Defendant contends that "more than half" of the claims that form the basis of the Complaint are barred by the applicable statute of limitations. (Motion at 11.) Defendant contends that each cause of action in the Complaint is subject to a two-year statute of limitations because claims for breach of implied-in-law and implied-in-fact contracts are

subject to a two-year statute of limitations under California law. *Id.* at 11–14 (citing Cal. Code Civ. Proc. § 339). With respect to Plaintiffs' other causes of action ("Services Rendered" and "Declaratory Judgment") (Compl. ¶¶ 38–47), Defendant contends that the applicable statute of limitations for each are determined based on the principal relief sought in the Complaint; therefore, these causes of action should likewise be subject to the two-year statute of limitations. (Motion at 12–14.)

Defendant also contends that Plaintiffs' claims accrued on the date that they received correspondence from Defendant regarding reimbursement—including partial payment or complete denial of reimbursement—for each patient's medical care. *Id.* at 14–15. Defendant contends that claims related to patients about whom it issued correspondence to Plaintiffs on or before January 27, 2022 should be barred by the two-year statute of limitations: "Because it is MediExcel's practice to mail [Explanations of Benefits] and checks no later than one business day after their issue,"[1] this correspondence "would have reached [Plaintiffs] well in advance of February 13, 2022." *Id.* at 15. Defendant contends that this correspondence put Plaintiffs on notice of its partial or complete denial of reimbursement more than two years prior to the filing of this action on February 13, 2024. *Id.*

Defendant contends that it issued correspondence in the form of an Explanation of Benefits ("EOB") or check "for 551 of the 1,000 [reimbursement] claims at issue" on or before January 27, 2022, and that it is entitled to judgment as a matter of law for all causes of action arising from these reimbursement claims. *Id.* In support of its argument, Defendant submits as an exhibit to the Declaration of Jim Arriola a spreadsheet entitled "MediExcel Disputed Claims List." (ECF No. 49-1.)[2] This spreadsheet ("Exhibit A")

---

[1] Explanations of Benefits are documents shared with "the healthcare provider and patient outlining the payment that MediExcel has determined is appropriate for [a given] claim." (Motion at 8.)
[2] Jim Arriola is the Executive Vice President of Defendant MediExcel. (Arriola Decl. ¶ 1.)

contains patient data pertaining to the 1,001 MediExcel insureds, including the purported "Date of Payment/EOB" for their medical claims. *Id.*

Plaintiffs make two arguments in response. First, Plaintiffs contend that Defendant "MediExcel has failed to carry its evidentiary burden with respect to its statute of limitations defense" because Exhibit A is inadmissible, unreliable, and irrelevant. (ECF No. 55 at 9; *see also* Objections to Arriola Decl., ECF No. 55-6 ("Evidentiary Obj.").) Plaintiffs contend that Exhibit A is inadmissible because it reflects "unknown documents, created by unknown individuals," lacks foundation, and contains hearsay. (ECF No. 55 at 9.) Plaintiffs contend that Exhibit A was produced "over three months after the discovery cutoff" and that they were unable to "take the deposition of the person at MediExcel who created" the spreadsheet. *Id.* at 12. Plaintiffs contend that Exhibit A is unreliable because it contains inaccuracies. *Id.* at 13–15. Plaintiffs contend that Exhibit A is irrelevant because it "does not even purport to [list] the alleged accrual dates for the statute of limitations" and instead lists the dates that Defendant sent notice of its payment decision, rather than the dates that Plaintiffs received such notice. (ECF No. 55 at 9, 11, 15 (citing *Vishva Dev, M.D., Inc. v. Blue Shield of California Life & Health Ins. Co.*, 2 Cal. App. 5th 1218, 1226 (Cal. Ct. App. 2016).) Plaintiffs contend that the communications described in Exhibit A—EOBs and checks—fail to "tell the Sharp Hospitals the nature of the denials" and therefore do not correspond with the accrual of their claims for purposes of the statute of limitations. (ECF No. 55 at 15–16.) Plaintiffs contend that Defendant has therefore failed to carry its evidentiary burden.

Second, Plaintiffs contend that the applicable statute of limitations for their claims is three years, rather than two years, because this action concerns liability created by statute. *Id.* at 10. Plaintiffs allege that they have a "statutory obligation to provide care to all individuals who present at [their] emergency department[s]" and "MediExcel has a statutory duty to pay Sharp [Hospitals] for the emergency and post stabilization care [they] provide[]. . . ." *Id.* at 16–17 (citing Cal. Health & Safety Code §§ 1317, 1371.4(b); 42 U.S.C. § 1395dd). Plaintiffs contend that Cal. Code Civ. Proc. § 338(a), which imposes a

three-year statute of limitations for "[a]n action upon a liability created by statute," is the more appropriate standard for their claims.

### 1. *Exhibit A*

In support of a motion for summary judgment, a party may support its assertion that facts are not genuinely disputed by "citing to particular parts of materials in the record," including depositions, affidavits, and declarations made on personal knowledge and setting out facts that would be admissible in evidence. Fed. R. Civ. P. 56(c).

Plaintiffs contend that Exhibit A is insufficient to establish that no genuine dispute of fact exists regarding the accrual of Plaintiffs' claims. Plaintiffs contend that Exhibit A is not "evidence of the date the hospital received" the EOB or check sent by Defendant and, accordingly, does not establish when Plaintiffs' claims accrued for each patient. (ECF No. 55 at 15.) Plaintiffs contend that the date of issuance of these communications is not the same as the date of their receipt. *Id.* Plaintiffs also contend that the issuance of a check—rather than an EOB—does not result in the accrual of any claim because the check "does not itself tell the Sharp Hospitals the nature of the denials. . . . It is just a check." *Id.* Defendant responds that claims accrue on the date that Plaintiffs are "on notice of all facts essential to their claim": the recipient hospital need only know "(i) the services it rendered to the MediExcel member, (ii) its charge for those services, and (iii) what MediExcel paid." (ECF No. 60 at 11.) Defendant contends that Plaintiffs have been made aware of the "harm, wrongdoing, and causation" necessary to accrue any claim for repayment at the time that MediExcel renders the "alleged underpayment," including through the issuance of a check in partial fulfilment of Plaintiffs' requested reimbursement. *Id.* at 12.

Under California law, claims related to medical reimbursement accrue only "once the insurer has issued an unequivocal denial of payment in writing." *Vishva Dev*, 2 Cal. App. 5th at 1223 (citing *Prudential-LMI Com. Ins. v. Superior Court*, 51 Cal. 3d 674, 678 (Cal. Ct. App. 1990)). In *Vishva Dev*, the California appellate court held that an EOB was sufficient to put the recipient on notice that "its claim[s] for payments were being denied in part or in whole" and was therefore adequate for his claims to accrue for purposes of the

statute of limitations. *Id.* at 1222–24. A federal district court reached the same conclusion with respect to EOBs in *Stanford Health Care v. USAble Mutal Ins. Co.* and stated that "the court in *Vishva Dev* did not articulate any rule about the type of document that an insurer must use to formalize its coverage decision. It simply found that, on the facts before it, the EOB notices served as sufficiently unequivocal written denials of payment." 548 F. Supp. 3d 909, 914–915 (N.D. Cal. 2021); *see also IV Solutions, Inc. v. PacifiCare Life and Health Ins. Co.*, Case No.: CV 16-07153 SJO (MRWx), 2016 WL 7888009, at *6 (C.D. Cal. Dec. 19, 2016) (holding that EOBs that contained language inviting "additional information" did not suffice to "unequivocally" deny the recipient's reimbursement claims).

Exhibit A does not contain sufficient information to establish the date that Defendant issued an unequivocal denial of payment to Plaintiffs in writing for each MediExcel insured. The rightmost column in Exhibit A indicates the "Date of Payment/EOB" for each patient without identifying: (a) whether the relevant communication was a check or an EOB; (b) the contents of that communication; (c) whether the parties exchanged any further communications related to that patient's reimbursement claims; and (c) the date on which the communication was received by Plaintiffs. Defendant has not met its burden as a matter of law to demonstrate that the communications related to each patient were "unequivocal denial[s]." *Visha Dev*, 2 Cal. App. 5th at 1223. Summary judgment is not appropriate for claims related to the 551 patients on the basis of the applicable statute of limitations.

The Court declines to consider Plaintiffs' objections to the admissibility of Exhibit A at this stage. Parties may direct discovery disputes to the attention of the Honorable Magistrate Judge Jill L. Burkhardt. Parties may raise evidentiary objections in motions in limine.

/ / /

/ / /

/ / /

/ / /

### 2. *Statutes of Limitations*

Defendant contends that the appropriate statute of limitations for all causes of action is California's two-year limitations period for "action[s] upon a contract . . . not founded upon an instrument of writing," Cal. Code Civ. Proc. § 339, because Plaintiffs seek relief based on the "implied contract [that] arises between the non-contracted provider and the health plan[,] which requires the health plan to reimburse the provider for services rendered to the member." (Compl. ¶ 12.)

Plaintiffs contend that the applicable statute of limitations is California's three-year limitations period for "action[s] upon a liability created by statute." Cal. Code Civ. Proc. § 338(a). Plaintiffs contend that Defendant's payment obligations arise from the Knox-Keene Act, which requires emergency departments to provide medical care to persons in need and requires health care service plans to reimburse emergency departments for that care. *See* Cal. Health & Safety Code §§ 1351.2, 1371.4(b). Plaintiffs filed a Request for Judicial Notice identifying an order issued by the Superior Court of California in a case with substantially similar facts to this action. (ECF No. 56.) In that case, the state trial court applied the three-year statute of limitations and, in support of its holding, stated that "there was never an analogous common law right requiring private health insurers to reimburse health care providers prior to the Knox-Keene Act." Ruling on Defendant's Motion for Summary Adjudication at 3, *Kaweah Delta Health Care District vs. Kaiser Foundation Health Plan, Inc.*, No. VCU279930 (Cal. Super. Ct. Aug 12, 2019). During Oral Argument, counsel for Plaintiffs indicated that a two-year statute of limitations would be appropriate for Plaintiffs' third cause of action for breach of an implied-in-fact contract but maintained Plaintiffs' position that the three-year period applies to all other causes of action. (Compl. ¶¶ 33–37.)

Defendant responds that the three-year limitations period in § 338(a) applies only when "the liability is embodied in a statutory provision *and* [is] of a type which did not exist at common law." *Lehman v. Superior Court*, 145 Cal. App. 4th 109, 118 (Cal. Ct. App. 2006) (quoting 3 Witkin, Cal. Proc. (3d ed. 1985) Actions, § 146, p. 488). In other

11

words, "[a] liability is created by statute if it would not exist but for the statute." *Id.* at 119 (quotation omitted) (emphasis omitted). Defendant contends that the statutory and regulatory obligations relevant to this case are "meant to embody" the traditional legal principle of *quantum meruit* and suggests that the statutory references in the Complaint only serve to reflect contract principles that operate at common law. (Motion at 12 (citing 28 Cal. Code Regs. § 1300.71(a)(3)(B)).) Defendant identifies a case in which the District Court for the Northern District of California applied the two-year statute of limitations; however, the parties in that case did not "disagree about the applicability" of the two-year statute of limitations to their claims. *Stanford Health Care*, 548 F. Supp. 3d at 910–16.

Plaintiffs' claims for breach of implied-in-law contracts related to emergency and post-stabilization services seek liability for alleged violations of Defendant's obligations arising under the Knox-Keene Act. (Compl. ¶¶ 19–32.) The Complaint identifies statutory obligations under California law to provide and reimburse medical care as the basis for Plaintiffs' causes of action for breach of implied-in-law contracts. (*Id.* ¶¶ 9–11, 14, 25–28 (citing Cal. Health & Safety Code §§ 1371.4(b), 1262.8(d)).) California courts have repeatedly recognized the statutory basis for these obligations. The California Supreme Court, in a case concerning whether emergency doctors may bill patients directly for charges denied by healthcare plan providers, stated: "[D]octors are *statutorily* required to provide emergency care" and, "when the patient is a member of a [healthcare plan], the [healthcare plan provider] is *statutorily* required to pay for the emergency care." *Prospect Med. Grp, Inc. v. Northridge Emerg. Med Grp*, 45 Cal. 4th 497, 501 (Cal. 2009) (emphasis added); *id.* at 507 (describing a "statutory scheme" that "requires [healthcare plan providers] to pay doctors for emergency services rendered to their subscribers"). In *Cnty. of Santa Clara v. Superior Ct.*, the California Supreme Court described an "implied-in-law contract claim based on the reimbursement provision of the Knox-Keene Act" as seeking to compel the healthcare plan provider to "comply with its statutory duty." *Cnty. of Santa Clara v. Superior Ct.*, 14 Cal. 5th 1034, 1038 (Cal. 2023); *id.* at 1050 (describing the medical provider's *quantum meruit* claim as premised "on a reimbursement duty imposed

by statute"). In *Bell v. Blue Cross of California*, in which an emergency room physician asserted claims against healthcare plan providers for unreasonably low reimbursement rates, the California Court of Appeal similarly wrote: "Subdivision (b) of section 1371.4 [of the California Health & Safety Code] was enacted in 1994 to impose a mandatory duty upon health care plans to reimburse non-contracting providers for emergency medical services." *Bell v. Blue Cross of California* 131 Cal. App. 4th 211, 216 (Cal. Ct. App. 2005); *id.* at 215 ("The Knox-Keene Act is a comprehensive system of licensing and regulation . . . ."); *id.* at 222 (describing "the obligation to 'reimburse' imposed by section 1371.4"). California statutes form the legal basis for Plaintiffs' causes of action for breaches of implied-in-law contracts and, accordingly, the Court holds that the three-year statute of limitations period in California Code of Civil Procedure § 338(a) governs Plaintiffs' first, second, and fourth causes of action for breaches of implied-in-law contracts and for services rendered.[3]

The two-year statute of limitations in California Code of Civil Procedure § 339 applies to Plaintiffs' third claim for breach of an implied-in-fact contract. (Compl. ¶¶ 33–37.) This cause of action, unlike those discussed above, does not cite or rely upon obligations under the Knox-Keene Act and instead seeks relief based on Defendant's "expressly or impliedly authorizing . . . post-stabilization services" after failing to respond to Plaintiffs' requests to authorize medical care. *Id.* ¶ 34. Plaintiffs allege that they "performed all of the obligations required of them" by virtue of the implied-in-fact contract and now seek relief based on the theory that Defendant failed to perform its payment obligations in turn. This cause of action, unlike those discussed above, does not identify California statutes as the basis of liability and instead grounds its claim in an unwritten contractual relationship between the parties. Accordingly, the two-year statute of

---

[3] The fourth cause of action for "Services Rendered" incorporates the same theory of relief as Plaintiffs' earlier causes of action for breaches of implied-in-law contracts. This fourth cause of action states: "By words or conduct, Medi-Excel became indebted to the Sharp Hospitals for the services rendered by the Sharp Hospitals to Medi-Excel's members." (Compl. ¶¶ 38–42.)

limitations in § 339 applies to Plaintiffs' third cause of action. *See Thompson v. California Brewing Co.*, 150 Cal. App. 2d 469, 477 (Cal. Ct. App. 1957) (applying the two-year statute of limitations to claims based on an unwritten contract).

Plaintiffs' fifth cause of action for declaratory relief seeks a "judicial determination that Medi-Excel should pay the Sharp Hospitals for the post-stabilization medical services . . . in cases when Medi-Excel fails to timely respond to requests for post-stabilization care." (Compl. ¶¶ 43–47.) Under California law, the statute of limitations applicable to a cause of action seeking declaratory relief "depends on the right or obligation sought to be enforced, and the statute's application generally follows its application to actions for damages or injunction on the same rights and obligations." *Howard Jarvis Taxpayers Ass'n v. City of La Habra*, 25 Cal. 4th 809, 821 (Cal. 2001) (citing 3 Witkin, Cal. Proc. (4th ed. 1996) Actions, §§ 624–25). Here, the fifth cause of action seeks declaratory relief as to Defendant's obligations under the Knox-Keene Act. In the fifth cause of action, Plaintiffs seek to enforce the same rights as those in its first, second, and fourth causes of action and, accordingly, the same three-year statute of limitations applies to the fifth cause of action.

Defendant has not carried its evidentiary burden at this stage nor demonstrated that the applicable statute of limitations for all causes of action is two years. The Court accordingly denies Defendant's Motion for Partial Summary Judgment for claims arising from the medical care of 551 patients based on the timeliness of their claims.

**B. Individual Claims**

Defendant contends that there are claims related to twenty-one patients (the "Individual Claims") whose medical care is ineligible for reimbursement because, based on the undisputed facts, exceptions apply to Defendant's obligation to reimburse Plaintiffs for services rendered. (Motion at 15–24.) These patient claims are listed in Exhibit C to the Declaration of Jim Arriola. (ECF No. 49-1 at 13–14.) Defendant identifies seven patients whose claims were partially denied because Plaintiffs "failed to seek authorization for post-stabilization treatment." (Motion at 17–19.) Defendant identifies two patients whose claims were partially denied because Plaintiffs "rendered medically unnecessary care." *Id.* at 19.

Defendant identifies nine patients whose claims were denied because "the patient refused to transfer to a MediExcel-contracted facility" after stabilization. *Id.* at 20–24. Defendant identifies three patients whose claims were denied because Plaintiffs "rendered non-emergency care." *Id.* at 19–20. For each, Defendant contends that Plaintiffs' expert Dr. Karen Meador agrees with its assessment of the relevant facts, and that summary judgment is appropriate for these Individual Claims. *Id.* at 16; *see also* Expert Report of Karen Meador, M.D., M.B.A. and related Exhibits, ECF No. 49-2 at 25–205.

Plaintiffs "agree[]" with Defendant as to the factual basis for the partial or complete denials associated with sixteen of the Individual Claims.[4] (ECF No. 55 at 26.) Plaintiffs respond that, with respect to the five other Individual Claims, factual disputes preclude summary judgment. *Id.* at 27–32. In its Reply, Defendant "withdraws its motion as to those [five] claims." (ECF No. 60 at 9 n.5.)

With respect to the sixteen Individual Claims for which there is no factual dispute as to the adequacy of Defendant's partial or complete denial of reimbursement, Plaintiffs raise two contentions. First, Plaintiffs argue that the records submitted by Defendant in support of this portion of the motion are inadmissible. (ECF No. 55 at 26.) Second, Plaintiffs contend that summary judgment is inappropriate for these claims because—except for complete denials because of non-emergency care—Defendant has not shown the portion of each denial that is attributable to the cited exception. *Id.* The Court reviews each of these contentions.

First, Plaintiffs contend that the records submitted by Defendant in support of this portion of the Motion are "not properly authenticated" under Federal Rule of Evidence 901. *Id.* at 26 n.4; Evidentiary Obj. at 10–11. Plaintiffs also contend that the Declaration

---

[4] Plaintiffs state that they "agree[] with MediExcel as to 13" of its "partial denials for reasons other than the rate paid for emergency services." (ECF No. 55 at 26.) However, Plaintiffs then list: "3 of the post-stabilization claims; 1 of the medical necessity denials; all 3 non-emergency denials; and all 9 refusal to transfer claims." *Id.* at 26–27 (footnotes omitted). That list reflects sixteen—rather than thirteen—patients for whom Defendant MediExcel issued partial denials. In another passage of its Opposition, Plaintiffs also describe that they "agree[] with [Defendant] MediExcel as to 16" of the patients' claims. *Id.* at 10.

of Andrew Dane is insufficient to authenticate these records because "Mr. Dane is counsel of record for MediExcel" and the documents "should be properly authenticated by a MediExcel witness" because they were "produced by MediExcel." (Evidentiary Obj. at 10–11.) Defendant responds that Plaintiffs do not "dispute that the document is genuine or accurate" and merely "make[] a technical challenge" to the records. (Resp. to Evidentiary Obj. at 21.) Defendant also contends that Plaintiffs produced these records during discovery and that the records need not be authenticated when introduced by a party opponent. *Id.* at 23 (citing *Orr*, 285 F.3d at 777 n.20). Defendant also filed a Reply Declaration of Jim Arriola (ECF No. 60-2) that purports to authenticate the records. (Resp. to Evidentiary Obj. at 23.)

The Court overrules Plaintiffs' evidentiary objections related to the Individual Claims. The records at issue for the Individual Claims have been identified with specificity in the Declaration of Andrew Dane (ECF No. 49-3), shared in discovery, and further authenticated by Mr. Arriola. (Arriola Reply Decl. ¶¶ 8–13.) There is sufficient basis to find, under Federal Rule of Evidence 901, that the records are what the proponent claims they are.

Second, Plaintiffs contend the motion for summary judgment should be denied for the Individual Claims that were denied only in part—rather than in full—because "MediExcel has not identified which charges should be denied and excluded" for each patient. (ECF No. 55 at 26.) Among the sixteen undisputed Individual Claims, there are three non-emergency denials that rejected Plaintiffs' reimbursement claims in full and thirteen denials on other bases that rejected Plaintiffs' reimbursement claims only in part. (Motion at 20–21; ECF No. 55 at 26.) Plaintiffs contend that, with respect to the thirteen partial denials, the EOBs include multiple "denial codes" and that only some of these codes describe the exemptions to reimbursement requirements under California law. (ECF No. 55 at 26.) Plaintiffs contend that it is "impossible from this limited information" to determine which portion of the denied charges are based on the exemptions rather than other reasons outside of the scope of the Motion. *Id.* Defendant responds that its failure to

identify the "exact dollar amount that Sharp seeks" as reimbursement related to the undisputed exemptions does not preclude summary judgment because "a defendant does not need to calculate plaintiff's purported damages to establish a right to summary adjudication." (ECF No. 60 at 14.) Defendant also contends that, "[e]ven if Sharp were correct that the lack of precise dollar figures precludes summary judgment, MediExcel would still be entitled to a factual finding under [Federal Rule of Civil Procedure] 56(g) that MediExcel's partial denials for these patient claims were appropriate." *Id.*

The Court holds that, among the Individual Claims, summary judgment is appropriate only for claims related to the three patients whose reimbursements were denied in full. Defendant has not demonstrated that, for the other thirteen partial denials, there are no remaining disputes as to material facts. Despite the parties' agreement as to the legal adequacy of Defendant's partial denials, there remains an issue of fact about the dollar amount of medical charges associated with each denial code listed in the EOBs for these patients. Summary judgment is therefore inappropriate for those thirteen claims related to partial denials.

Accordingly, the Court grants Defendant's Motion for Partial Summary Judgement for claims related to the three (3) patients whose reimbursements charges were denied in full on the basis of non-emergency care and denies the Motion for Partial Summary Judgment as to all other Individual Claims.

V. **CONCLUSION**

IT IS HEREBY ORDERED that the Motion for Partial Summary Judgment (ECF No. 47) is granted in part and denied in part. The Motion for Partial Summary Judgment is granted with respect to claims arising from the medical care of three (3) patients about whom the parties do not dispute that reimbursement claims were denied in full based on non-emergency care. The Motion for Partial Summary Judgment is denied in all other respects.

IT IS FURTHER ORDERED that Plaintiffs' Motion to File Under Seal (ECF No. 53) is granted with respect to the following documents:

- All Exhibits to the Declaration of Gerilynn Sevenikar.
- Exhibit 100 to the Declaration of Ariana Fuller.

IT IS FURTHER ORDERED that Defendant's Motion to File Under Seal (ECF No. 58) is granted with respect to the following documents:

- Exhibits 49–63 to the Declaration of Andrew Dane.

IT IS FURTHER ORDERED that the Court sets the following deadlines: (1) counsel shall comply with the pre-trial disclosure requirements of Federal Rule of Civil Procedure 26(a)(3) by February 6, 2026; (2) counsel shall meet and take the action required by Civil Local Rule 16.1.f.4 by February 27, 2026; (3) Plaintiffs' counsel shall provide opposing counsel with the proposed pretrial order by March 6, 2026; (4) the parties shall lodge the proposed pretrial order with the Court, including any objections to the other party's respective pretrial disclosures, by March 13, 2026; and (5) the final Pretrial Conference is scheduled on March 20, 2026 at 9:00 AM before the Honorable William Q. Hayes in Courtroom 15B. In meeting these deadlines, the parties shall otherwise adhere to the relevant instructions contained in the prior Scheduling Order. (*See* ECF No. 40.)

Dated: January 9, 2026

Hon. William Q. Hayes
United States District Court